**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA LUIS and LUCY GOMEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:12-cv-2922 |
| | ) | |
| v. | ) | |
| | ) | |
| SMITH PARTNERS & ASSOCIATES, LTD., | ) | |
| SMITH REO PROPERTIES, COYA SMITH, | ) | |
| and ANDY HORN, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS SMITH PARTNERS & ASSOCIATES, LTD., SMITH
REO PROPERTIES, COYA SMITH & ANDY HORN'S MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' COMPLAINT PURSUANT TO FRCP 12(b)(6)**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION……………………………………………..……………………………1

FACTUAL BACKGROUND………………………………………..………………………1

LEGAL STANDARD…………………………………………………..……………………3

ARGUMENT……………………………………………………………..…………………4

      I.      Grounds for dismissal of Count I (Fair Housing Act)………...…………………..4

      II.     Grounds for dismissal of Count II (Civil RICO)……….…………………………6

      III.    Grounds for dismissal of Count III (trespass to chattels)………..………………9

      IV.    Grounds for dismissal of Count IV (battery)……………………………………11

      V.     Grounds for dismissal of Count V (iied)..............................................................12

      VI.    Grounds for dismissal of Count VI (Chicago RLTO)…………………………...15

      VII.   Grounds for dismissal of Count VII (injunctive relief)…………………………16

      VIII.  Defendant Smith REO Properties is not a legal entity that can be sued…………17

      IX.    Defendant Coya Smith does not face personal liability…………………………17

      X.     Counts I, IV, V, and VI are barred by the statute of limitations…………..…….18

CONCLUSION…………………………………………………………………………..…19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)…………………………………………...………3-4

*Bakes v. St. Alexius Med. Ctr.*, 955 N.E.2d 78, 85 (1st Dist. 2011)………………..………...11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)…………………………..…3-4, 6, 9, 18

*Brandt v. Schal Assoc., Inc.*, 121 F.R.D. 368, 387-88 (N.D. Ill. 1988)…………..………………8

*Chesler v. Conroy*, 2008 U.S. Dist. LEXIS 80074 at *7-9 (N.D. Ill. Oct. 8, 2008)…………..5

*Com-Pac Int'l, Inc. v. The Packmate Co.*, 2007 U.S. Dist. LEXIS 62531 (S.D. Ill. Aug. 24, 2007)…………………………………………………………...………………...…17

*Davis v. Wells Fargo Bank*, 2008 U.S. Dist. LEXIS 31636 at *20, fn. 8 (N.D. Ill. Apr. 17, 2008) ………………………………………………………………………….……………7

*Dietz v. Ill. Bell Tel. Co.*, 154 Ill. App. 3d 554, 559 (1st Dist. 1987)…………..……………10

*Edwards v. Lake Terrace Condo. Assoc.*, 2011 U.S. Dist. LEXIS 43304 at *11-13 (N.D. Ill. Apr. 21, 2011)……………………………………………………………………..5

*Farnor v. IRMCO Corp.*, 73 Ill. App. 3d 851, 855-57 (1st Dist. 1979)………..…….…..…..13-14

*Farrar v. Eldibany*, 137 Fed. Appx. 910, 912 (7th Cir. 2005)………………………..……………5

*Gardner v. Ill. Pref. Real Estate, LLC*, 2006 U.S. Dist. LEXIS 87578 at *23-26 (N.D. Ill. Dec. 4, 2006)………………………………………………………...……………...………12

*Glowacki v. Moldtronics, Inc.*, 264 Ill. App. 3d 19, 23 (2nd Dist. 1994)……………………..….11

*Hardaway v. CIT Group*, 2011 U.S. Dist. LEXIS 84140 at *9-10, 20-21 (N.D. Ill. Aug. 1, 2011) ……………………………………………………………………………………….5,13

*Interfaith Housing Ctr. of the Northern Suburbs v. Bernsen*, 2011 U.S. Dist. LEXIS 75554 at *10-11 (N.D. Ill. Jul. 13, 2011)………………………………………..……………...18

*Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990)………………………………..……6-8

*Jewelers Mut. Ins. Co. v. Firstar Bank Illinois*, 341 Ill. App. 3d 14, 20 (1st Dist. 2003)………10

*Krejci v. Capriotti*, 16 Ill. App. 3d 245, 247 (1st Dist. 1973)……………………..…………10-11

*Landis v. Marc Realty, LLC*, 235 Ill. 2d 1, 13-15 (2009)………………………………………19

*Lewis v. Weis*, 2012 U.S. Dist. LEXIS 2063 at *7 (N.D. Ill. Jan. 5, 2012)……...……………...10

*Lewis v. Schmidt*, 2011 U.S. Dist. LEXIS 1051 at *24 (N.D. Ill. Jan. 4, 2011)………….……5-6

*Padilla v. United States*, 659 F. Supp. 2d 1290, 1294 (Ct. Int'l Trade 2009)……………...…..16

*Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976)……………………………………......13

*Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 389 (7th Cir. 1984)…...……17

*Schiller v. Mitchell*, 357 Ill. App. 3d 435, 447 (2nd Dist. 2005)………………….………...12-14

*Segreti v. Lome*, 747 F. Supp. 484, 486-87 (N.D. Ill. 1990)…………………………..……..8-9

*Selvy v. Beigel*, 283 Ill. App. 3d 532, 537 (1st Dist. 1996)………………………………………15

*Sheikh v. Lichtman*, 2012 U.S. Dist. LEXIS 55415 at *13 (N.D. Ill. Apr. 19, 2012)……………6

*Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)………………………………….…………4-5

*Steel v. Hahn Prop. Mgmt. Corp.*, 1994 U.S. App. LEXIS 4369 (7th Cir. Mar. 8, 1994)……...17

*Routen v. Citi*, 706 F. Supp. 2d 854, 862 (N.D. Ill. 2009)………………………………….....14

*Torres v. All Town Bus Servs., Inc.*, 2011 Ill. App. Unpub. LEXIS 257 (1st Dist. 2011)……...19

*Twardy v. Northwest Airlines, Inc.*, 2001 U.S. Dist. LEXIS 2112 at *4-6, 8-9 (N.D. Ill. Feb. 28, 2001)…………………………………………………………………………..…11-12

*United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir 1991)…………………………….....…16

*Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 903 (N.D. Ill. 2009) …………………………………………………………………….……………......14

*Zahl v. Krupa*, 399 Ill. App. 3d 993, 1020 (2nd Dist. 2010)………………………..……17-18

## Statutes

18 U.S.C. § 1702…………………………………………………………..…….......7-8

18 U.S.C. § 1951……………………………………………………….……………7-8

18 U.S.C. § 1961…………………………………………………….…………7-8

18 U.S.C. § 1962……………………………………………………...…………6

42 U.S.C. § 3604……………...……………………………….……………….4-6

42 U.S.C. § 3613……………………………………………………………18

42 U.S.C. § 3617……………………………………...…………...…...……...4-6

720 ILCS 5/12-6…………………………………………………….………7-8

720 ILCS 5/18-1………………………………………………………7-8

735 ILCS 5/13-202………………………………………………...…………18

Chicago Residential Landlord Tenant Ordinance §5-12-030………………...………..15-16

Chicago Residential Landlord Tenant Ordinance §5-12-160…………………..……..15-16, 18

Defendants, Smith Partners & Associates, Ltd., Smith REO Properties, Coya Smith, and Andy Horn (collectively "Defendants"), by and through their attorneys, KARBAL COHEN ECONOMOU SILK & DUNNE LLC, hereby submit their Memorandum of Law in support of their Motion to Dismiss the Complaint of Maria Luis and Lucy Gomez (the "Complaint") (Docket No. 1), and pursuant thereto, respectfully state as follows:

## INTRODUCTION

This action arises out of alleged incidents at a property located at 5818 N. Spaulding, Chicago, Illinois (the "Property"). (Compl. ¶5, Docket No. 1). Plaintiffs are alleged residents of the Property, and filed suit based on their assumption that Defendants own and manage the Property. *Id.* at ¶¶5-8. The public records establish, however, that Defendants do not own the Property. (Public records from the Cook County Recorder of Deeds for the property are attached hereto as Exhibits A-C.) Plaintiffs assert the following causes of action in their Complaint:

> Count I- Fair Housing Act (asserted by both Plaintiffs against all Defendants)
> Count II- Civil RICO (asserted by both Plaintiffs against all Defendants)
> Count III- Trespass to Chattel (asserted by both Plaintiffs against all Defendants)
> Count IV- Battery (asserted by Plaintiff Gomez against all Defendants)
> Count V- Intentional Infliction of Emotional Distress (asserted by both Plaintiffs against all Defendants)
> Count VI- Chicago Residential Landlord and Tenant Ordinance § 5-12-160 (asserted by both Plaintiffs against all Defendants)
> Count VII- Injunctive Relief (asserted by both Plaintiffs against all Defendants)

For the reasons set forth below, all seven causes of action must be dismissed with prejudice under FRCP 12(b)(6), and this action must be disposed of as to all defendants in its entirety.

## FACTUAL BACKGROUND

Plaintiffs allege that they are residents of the Property, and bring this claim against the purported owners/managers for alleged incidents at the Property. (Compl. ¶5). Plaintiffs allege that no forcible entry and detainer or eviction actions have been filed, nor have they received

1

notice of such proceedings. *Id.* at ¶9. Plaintiffs allege that Defendant Smith Partners and Associates, Ltd. operates under the assumed name Smith REO Properties (another Defendant), that Defendant Smith Partners and Associates, Ltd. is owned and operated by its registered agent, Defendant Coya Smith, and that Defendant Andy Horn is an agent of Defendant Smith Partners and Associates, Ltd. *Id.* at ¶¶ 5-7. Plaintiffs allege that Defendants own and manage the Property, although Plaintiffs also allege in contradictory fashion that the Property was acquired by a financial institution in a foreclosure proceeding. *Id.* at ¶8. The Court should take judicial notice of the fact that the Property was owned by HSBC Bank USA and Sotirios Luridas and Angela Luridas, not by Defendants, during the relevant time frame. (Exhibits A-C).

This action arises out of Defendants' alleged "campaign of threats and harassment intending to force Plaintiffs to leave the property," which series of events allegedly began in winter 2010. (Compl. ¶10). Plaintiffs allege that Defendant Horn did the following, while acting at the request of Defendant Smith, the alleged owner and operator of the Defendant corporation:

> Entered the basement and removed the furnace in winter 2010 (*Id.* at ¶11);
>
> Placed a padlock on the front door in November 2010 (*Id.* at ¶12);
>
> Banged on the windows and doors, and removed Plaintiffs' mail in Spring 2011 (*Id.* at ¶13);
>
> Entered the basement and removed most of its contents, removed the furnace, turned off the water heater, and locked the basement in May 2011 (*Id.* at ¶14);
>
> Broke the locks to the front doors in March 2012 (*Id.* at ¶15);
>
> Entered the Property, threatened Plaintiffs, struck Plaintiff Gomez, and disconnected the water and electricity in August 2011 (*Id.* at ¶17); and
>
> Failed to pay the water bill (all Defendants) (*Id.* at ¶20).

2

In Count I for the Fair Housing Act, Plaintiffs allege that Defendants have been threatening and intimidating Hispanic tenants for years, and further allege that the alleged conduct in this suit was part of a pattern of discrimination in the rental of dwellings on the basis of race or national origin. *Id.* at ¶¶22-28. In Count II, Plaintiffs allege that Defendants used a racketeering enterprise, and that the Defendants' alleged conduct constituted a pattern of racketeering activity. *Id.* at ¶¶29-43. Count III is labeled trespass to chattel, without any further specific allegations, although the prayer for relief indicates Plaintiffs are attempting to state a cause of action for trespass to Plaintiffs' "real and personal property." Count IV is labeled battery, without any further specific allegations. Count V for intentional infliction of emotional distress contends that Defendants' conduct was "objectively outrageous" and that Plaintiffs "suffered extreme emotional distress as a result." *Id.* at ¶¶44-45. Count VI alleges Defendants violated the Chicago Residential Landlord and Tenant Ordinance ("RLTO") § 5-12-160 through illegal threats and intimidation, which ordinance prohibits a landlord or one acting at a landlord's direction from ousting or attempting to dispossess any tenant from a dwelling without authority of law. *Id.* at ¶¶46-51. Count VII seeks injunctive relief based on the allegations that Defendants' conduct is ongoing, that Plaintiffs have no adequate legal remedy, and that Plaintiffs will suffer irreparable harm if an injunction is not issued. *Id.* at ¶¶52-53.

## **LEGAL STANDARD**

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading that merely states "labels and conclusions or

3

a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (citation omitted);

see also *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

**I.      Plaintiffs' claim under the Fair Housing Act (FHA) must be dismissed because Plaintiffs only allege speculative reasons for believing any discrimination occurred.**

Plaintiffs have failed to adequately plead an action under the FHA under either 42 U.S.C.

§ 3604(b) or 42 U.S.C. § 3617.  The relevant statutes state:

> § 3604.  Discrimination in the sale or rental of housing and other prohibited practices.
> As made applicable by section 803 [42 USC § 3603] and except as exempted by sections 803(b) and 807 [42 USC §§ 3603(b), 3607], it shall be unlawful—
> …
> (b) To discriminate against any person in the terms, conditions, or privileges of <u>sale or rental</u> of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
> …
>
> § 3617.  Interference, coercion, or intimidation
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 [42 USC § 3603, 3604, 3605, or 3606].

[Emphasis added.]  To state a claim under the FHA, a plaintiff must "sho[w] that the defendant

had discriminatory intent when making its decision or by showing that the decision caused a

discriminatory effect."  *Edwards v. Lake Terrace Condo. Assoc.*, 2011 U.S. Dist. LEXIS 43304

at *11 (N.D. Ill. Apr. 21, 2011).  A complaint fails to allege "discriminatory intent" and must be

dismissed under FRCP 12(b)(6) if it pleads only conclusions, but no facts, that would suggest the

defendants were motivated by discriminatory intent.  *Id.* at *12-13.  Likewise, conclusory

allegations of "discriminatory effect" or "disparate impact" must be disregarded, particularly if

the allegations indicate that the defendant's conduct affected all residents in the same manner.

*Id.* at *13-14.  In order to allege a "disparate impact" claim under the FHA, a plaintiff must

allege the "*specific*…practices that are allegedly responsible for any observed statistical

4

disparities" that allegedly indicate discrimination; it is insufficient for a plaintiff to merely allege a defendant's "generalized policy" causes a discriminatory impact. See *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (emphasis in original). Further, a claim under 42 U.S.C. § 3604(b) cannot be maintained if the plaintiff does not allege conduct in connection with the "sale or rental" of a dwelling. *Lewis v. Schmidt*, 2011 U.S. Dist. LEXIS 1051 at *24 (N.D. Ill. Jan. 4, 2011) (dismissing 42 U.S.C. § 3604(b) claim for failure to provide basic utilities because the plaintiff did not allege conduct in connection with the "sale or rental" of a dwelling).

A count under the FHA that alleges "nothing but sheer speculation" that a defendant engaged in discriminatory conduct must be dismissed under FRCP 12(b)(6). *Hardaway v. CIT Group*, 2011 U.S. Dist. LEXIS 84140 at *9-10 (N.D. Ill. Aug. 1, 2011) (dismissing FHA claim with prejudice under FRCP 12(b)(6)). In *Hardaway*, the FHA claim was dismissed because the plaintiff did not allege any basis for his speculative belief that defendant's refusal to modify his mortgage was racially motivated, nor did the plaintiff allege he was treated differently than others due to his race. For another example, in *Chesler*, the court granted a FRCP 12(b)(6) motion to dismiss FHA claims because the allegations only indicated that personal animosity created a hostile housing environment, not that there was any discrimination. *Chesler v. Conroy*, 2008 U.S. Dist. LEXIS 80074 at *7-9 (N.D. Ill. Oct. 8, 2008). The FHA does not apply to ordinary landlord-tenant disputes, and any FHA claim alleging discrimination without any factual basis therefor must be dismissed as frivolous. *Farrar v. Eldibany*, 137 Fed. Appx. 910, 912 (7th Cir. 2005) (affirming dismissal of § 3617 claim filed by black tenant against her white landlord under FRCP 12(b)(6), as there was no basis for suggesting that the landlord's failure to provide heat and hot water for three or four days was discriminatory).

Similarly, in our case, while Plaintiffs make various complaints about their housing environment, Plaintiffs do not allege any basis for their speculative conclusion that Defendants' conduct was racially motivated. Thus, this count does not meet the "plausibility" threshold of *Twombly*. Plaintiffs do not allege that Defendants treated them differently than Defendants treated residents of other races. Instead, Plaintiffs merely speculate that Defendants intended to discriminate against Hispanics. (Compl. ¶¶ 22-23). Further, Plaintiffs fail to allege Defendants' conduct had "discriminatory effect," because even if Defendants actually did disconnect utilities, add or remove locks, and cause other annoyances, such acts would have affected all residents in the building equally, not just the Hispanic residents. Plaintiffs cannot inject racial issues into the case when they are simply complaining of ordinary acts of alleged property mismanagement. Furthermore, Plaintiffs cannot maintain a claim under 42 U.S.C. § 3604(b) because they do not allege that Defendants sold or rented them a dwelling. *Lewis*, 2011 U.S. Dist. LEXIS 1051 at *24 (defendants were not liable under 42 U.S.C. § 3604(b) for disconnecting the water service when there were no allegations that plaintiff was sold or rented a dwelling). Likewise, as Plaintiffs' claim under 42 U.S.C. § 3617 is predicated upon Defendants' alleged violation of their rights under 42 U.S.C. § 3604(b), their claim under 42 U.S.C. § 3617 fails.

## II. Plaintiffs' RICO claim must be dismissed for failure to allege even a single predicate act or the existence of any "enterprise."

In order "[t]o state a valid RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Sheikh v. Lichtman*, 2012 U.S. Dist. LEXIS 55415 at *13 (N.D. Ill. Apr. 19, 2012) (citation omitted). In order "[t]o establish a pattern, a plaintiff must allege at least one of the acts listed in 18 U.S.C. § 1961(a)." *Davis v. Wells Fargo Bank*, 2008 U.S. Dist. LEXIS 31636 at *20 (N.D. Ill. Apr. 17, 2008), citing *Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990). In *Jennings*, the court

dismissed the RICO claim, because although the complaint alleged numerous violations of civil rights, constitutional law, and federal and state statutes, such were not "predicate acts" under 18 U.S.C. § 1961, and even if the complaint did allege isolated acts of racketeering, such would not constitute a "pattern." 910 F.2d at 1438-39. If a plaintiff fails to allege any acts "which fit within any of the subsections of 18 U.S.C. § 1961(1)," the complaint must be dismissed. *Davis*, 2008 U.S. Dist. LEXIS 31636 at *20, fn. 8.

Plaintiffs' RICO claim must be dismissed because Plaintiffs fail to allege any "predicate acts" as set forth in 18 U.S.C. § 1961(1). Instead, Plaintiffs' RICO count is solely based on allegations of 18 U.S.C. § 1951 (interference with commerce by threats or violence); 18 U.S.C. § 1702 (obstruction of correspondence); 720 ILCS 5/12-6 (intimidation), and 720 ILCS 5/18-1 (robbery). However, these assorted allegations do not constitute "predicate acts" under 18 U.S.C. § 1961(1).

To begin with, 18 U.S.C. § 1951 requires either actual or alleged robbery or extortion, neither of which is alleged in this case. Plaintiffs do not even attempt to allege extortion. While Plaintiffs' Complaint uses the word "robbery," Plaintiffs use the word "robbery" improperly. This statute defines "robbery" as follows:

> (1) The term "robbery" means the unlawful taking or obtaining of personal property <u>from the person or in the presence of another</u>, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. 18 U.S.C. § 1951(b)(1).

[Emphasis added.] Plaintiffs misunderstand the meaning of the word "robbery," and overlook that such act requires that Defendants take personal property "from the person or in the presence of another." In this case, there are no allegations that Defendants took any personal property from Plaintiffs' person or in the presence of another- instead, the Complaint suggests that no one was present when Defendants took any alleged items. Likewise, the Illinois statute uses a similar

definition of "robbery": "A person commits robbery when he or she takes property…<u>from the person or presence of another</u> by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1 (emphasis added). Plaintiffs do not allege "robbery" under either 18 U.S.C. § 1951 or 720 ILCS 5/18-1, because the allegations do not suggest that Plaintiffs or any other people were present when Defendants allegedly took any items. Plaintiffs misunderstand the difference between "robbery" and "theft." However, allegations of theft are not predicate acts under RICO. *Brandt v. Schal Assoc.*, Inc., 121 F.R.D. 368, 387-88 (N.D. Ill. 1988) (granting Rule 11 motion for sanctions against a plaintiff's counsel who attempted to characterize alleged theft as "robbery" under RICO and 18 USC § 1951).

Furthermore, 18 U.S.C. § 1702, regarding obstruction of correspondence, is not one of the federal statutes enumerated in 18 U.S.C. § 1961(1) as a "predicate act." Finally, the alleged violations of 720 ILCS 5/12-6 for "intimidation" are not "predicate acts" under RICO because such allegations do not "involv[e] murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical," much less does such conduct fall within any other subsection of 18 U.S.C. § 1961(1). Thus, while Plaintiffs go to great length to allege various violations by Defendants, none of the alleged acts constitute racketeering under RICO.

Turning to the other elements of a RICO claim, Plaintiffs have also failed to allege the element of an "enterprise." "An 'enterprise is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchial or consensual decision-making.'" *Segreti v. Lome*, 747 F. Supp. 484, 486 (N.D. Ill. 1990), citing *Jennings*, 910 F.2d at 1440. Conclusory allegations that an enterprise existed are insufficient, as "[t]he existence of an enterprise [must be] established by 'evidence of an ongoing organization,

8

formal or informal, and by evidence that the various associates function as a continuing unit.'" *Segreti*, 747 F. Supp. at 486. Likewise, a complaint that simply identifies the conduct of the purported "enterprise" is inadequate. *Id.* Instead, in order to survive a FRCP 12(b)(6) motion to dismiss, the plaintiff is required to plead "details about the structure of the enterprise." *Id.* at 486-87. In *Segreti*, the court dismissed the RICO claim under FRCP 12(b)(6) due to inadequate allegations of any "enterprise," as the plaintiffs failed to plead any details of the "scope and nature of the enterprise," as there were no facts as to "when the enterprise started, how long the enterprise continued or how the defendants fit into the enterprise." *Id.* at 487.

In this case, Plaintiffs only plead the legal conclusion that an "enterprise" existed. (Compl. at ¶¶31-32). Falling short of the standard in *Segreti*, Plaintiffs fail to plead any details of the structure of the "purported enterprise," as there are no details as to when such enterprise existed or the roles played by the different defendants. Further, the allegations tend to contradict the possibility that any enterprise could have existed, as the acts at issue were allegedly performed by Defendant Horn at Defendant Smith's direction, while Smith's status as owner and operator of defendant Smith Partners and Smith REO does not suggest that any separate entity was orchestrating such conduct. (Compl. ¶¶ 18-19). Plaintiffs' allegations are deficient and fail to meet *Twombly's* "plausibility" threshold that Defendants had created any enterprise.

## III.  Count III fails to state a claim for either trespass to chattels or trespass to land.

While this count is labeled "trespass to chattels," it is unclear if Plaintiffs are also attempting to allege a count for trespass to land, based on their reference to "real property." Plaintiffs thereby violate pleadings rules by intermingling causes of action, and this count must be dismissed because it is improperly pled. Regardless, Plaintiffs fail to plead a cause of action for either trespass to chattels or trespass to land.

Trespass to chattels, also known as trespass to personal property, "is an antiquated cause of action." *Lewis v. Weis*, 2012 U.S. Dist. LEXIS 2063 at *7 (N.D. Ill. Jan. 5, 2012). In order to state a claim for trespass to chattels, a plaintiff must allege that the defendant either "intentionally (a) dispos[ed] another of the chattel, or (b) us[ed] or intermeddl[ed] with a chattel in the possession of another." *Id.* (citation omitted). Further, the plaintiff must allege "causation and damages." *Id.* (citation omitted).

Here, Plaintiffs fail to allege any of the elements needed to state a claim for trespass to chattels. Plaintiffs do not allege that Defendants intentionally interfered with any of their items of personal property. While Plaintiffs allege that Defendants removed the furnace, items in the basement, and letters addressed to Plaintiffs, and further allege that Defendants' actions caused the pipes to freeze, it must be kept in mind that the furnace and pipes are fixtures attached to the real property, as opposed to personal property. See *Jewelers Mut. Ins. Co. v. Firstar Bank Illinois*, 341 Ill. App. 3d 14, 20 (1st Dist. 2003) (a furnace is a fixture). However, Plaintiffs do not allege that they owned the furnace, pipes, or items in the basement. Plaintiffs cannot allege they owned the furnace or pipes, considering such were attached to real property that was owned by an unnamed financial institution. (Compl. ¶8). Nor do Plaintiffs allege that they owned the contents in the basement. With respect to the letters, Plaintiffs do not allege they had possession of the letters. Thus, the count for trespass to chattels fails to state a claim.

Likewise, Plaintiffs fail to plead the elements of trespass to land. "Trespass is an intentional invasion of the exclusive possession and physical condition of land." *Dietz v. Ill. Bell. Tel. Co.*, 154 Ill. App. 3d 554, 559 (1st Dist. 1987). "…[T]he gist of an action in trespass is the injury to…possession[,] which requires that the plaintiff have actual possession at the time the wrongful act is committed." *Krejci v. Capriotti*, 16 Ill. App. 3d 245, 247 (1st Dist. 1973).

"The only exception to this requirement of actual possession is where plaintiffs are the owners and the property is unoccupied." *Id.* In this case, Plaintiffs do not allege that they had exclusive possession of the Property, nor do they allege that they had the right to exclusive possession. Further, while the Plaintiffs do not identify which visits by Defendants constituted trespass, Plaintiffs only allege that Defendants entered the Property three times- twice to the basement (Compl. ¶¶11, 14), and the other time to an unspecified area of the Property (Compl. ¶17). However, Plaintiffs do not allege they had the exclusive right to possession of whichever area that Defendants allegedly entered. Furthermore, as Defendants were allegedly managing the Property, it strains credulity for Plaintiffs to suggest that Defendants did not have the right to enter the basement and/or that any resident had exclusive possession of the basement.

## IV. Count IV for battery must be dismissed because Plaintiff Gomez does not allege that Defendants intended to cause any harmful or offensive contact.

Battery is an "ancient" and "arcane" cause of action. *Bakes v. St. Alexius Med. Ctr.*, 955 N.E.2d 78, 85 (1st Dist. 2011). "Under Illinois law, a person commits the tort of battery if (1) he acts intending to cause a harmful or offensive contact or an imminent apprehension of such a contact, and (2) harmful contact directly or indirectly results." *Gardner v. Ill. Pref. Real Estate, LLC*, 2006 U.S. Dist. LEXIS 87578 at *23-24 (N.D. Ill. Dec. 4, 2006). If there are no specific allegations that defendants "specifically intended to injure plaintiff," the claim must be dismissed. *Glowacki v. Moldtronics, Inc.*, 264 Ill. App. 3d 19, 23 (2nd Dist. 1994) (dismissing count for battery). Contact that is merely "personal and intrusive" does not constitute battery if the defendant did not intend to cause harmful or offensive contact. *Gardner*, 2006 U.S. Dist. LEXIS 87578 at *25-26. Further, the plaintiff must plead there was a lack of consent to such contact. *Twardy v. Northwest Airlines, Inc.*, 2001 U.S. Dist. LEXIS 2112 at *6 (N.D. Ill. Feb. 28, 2001). For example, in *Twardy*, the Northern District of Illinois found that allegations that a

defendant intentionally poured water on plaintiff, intentionally placed stickers on plaintiff, intentionally and forcibly turned the plaintiff's head, and abruptly grabbed the Plaintiff's head were insufficient to state a claim for battery. *Id.* at *4-6. Furthermore, a cause of action for battery cannot be maintained under the theory of *respondeat superior* based on conduct committed outside the scope of one's employment. *Id.* at *8-9.

Here, Plaintiff Gomez does not allege that Defendants intended to cause a harmful or offensive contact, nor does Plaintiff Gomez allege that any harmful or offensive contact actually occurred. The vague allegations that Defendants' conduct was "intentional, willful, and taken in disregard for the rights of others" are merely conclusory. (Compl. ¶28, incorporated in Count IV). Instead, this count is based on a single word- that Defendant Horn "struck" Plaintiff Gomez. (Compl. ¶17). However, as the Complaint is devoid of further factual allegations, such conduct does not rise to the level of being "harmful or offensive." Even more, there are no allegations that Defendants Smith Partners & Associates, Ltd., Smith REO Properties, or Coya Smith intended for Defendant Horn to cause any harmful contact to Plaintiff Gomez, and the claim cannot be maintained against said defendants under any theory of vicarious liability or *respondeat superior*, since striking Plaintiff Gomez would necessarily be outside the scope of Defendant Horn's employment. See *Twardy*, 2001 U.S. Dist. LEXIS 2112 at *8-9.

**V.      Count V for intentional infliction of emotional distress fails to state a claim because the conduct at issue does not rise to the level of "extreme and outrageous" needed to be actionable.**

In order to state a claim for intentional infliction of emotional distress ("iied"), a plaintiff must plead facts establishing "(1) that the conduct was truly extreme and outrageous, (2) that the actor intended that his conduct inflict severe distress or knew that there was a high probability that his conduct would inflict such distress, and (3) that the conduct in fact caused severe

emotional distress." *Schiller v. Mitchell*, 357 Ill. App. 3d 435, 447 (2nd Dist. 2005).  There are "relatively few" cases in Illinois that have upheld this cause of action.  *Farnor v. IRMCO Corp.*, 73 Ill. App. 3d 851, 855 (1st Dist. 1979).  The Northern District of Illinois imposes an "exceptionally high" standard in order for a claim for iied to survive a motion to dismiss.  *Hardaway v. CIT Group*, 2011 U.S. Dist. LEXIS 84140 at *20-21.

With respect to the first element, in order to be actionable, the conduct must be "atrocious, and utterly intolerable in a civilized community."  *Schiller*, 357 Ill. App. 3d at 447 (citations omitted).  For example, the court in *Schiller* found that a neighbor's constant videotaping of the property, repeated reports to the police and homeowners' association (which resulted in "numerous disruptive investigations"), and other acts of harassment did not constitute extreme and outrageous conduct.  *Id.* at 448-51.  Relative to the second element, the actor must know severe emotional distress will result, or there must be a "high degree of probability that severe emotional distress will follow and the actor goes ahead in conscious disregard of it."  *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976) (citations omitted).  It is "not…enough that the defendant…acted with an intent which is tortious or even criminal, or that he…intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'"  *Id.* (citation omitted).  With respect to the third element, "the distress must be of such intensity and duration that no reasonable person could be expected to endure it."  *Farnor*, 73 Ill. App. 3d at 856.  In *Farnor*, the court found that even though the plaintiff was frightened, worried, nervous, exhausted, "very distraught," "wept constantly," and "suffered the aggravation of a preexisting ulcer," there was no claim for emotional distress, as the emotions "suffered by a person of ordinary sensibilities under the circumstances" would not have been severe enough to

be actionable. *Id.* at 856-57. See also *Routen v. Citi*, 706 F. Supp. 2d 854, 862 (N.D. Ill. 2009) (dismissing iied claim which alleged "no facts describing mental, physical, or emotional infirmity"); *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 903 (N.D. Ill. 2009) (plaintiffs' fear of losing their home was not the sort of emotional distress necessary to state an iied claim).

Plaintiffs' complaints include adding or removing of locks, disruption in utility services, and Defendants' entrances to the Property in connection with its management. (Compl. at ¶¶10-17, 20). While alleged errors or carelessness in property management may cause annoyance and inconvenience to residents, such errors do not constitute the sort of "atrocious and utterly intolerable behavior" needed to maintain an iied claim. See *Schiller*, 357 Ill. App. 3d at 447. Further, with respect to the second element, the minimal allegations of intent (incorporated in Count V from ¶28) are conclusory. Also, the vague allegations as to the role played by each Defendant are insufficient to indicate which Defendant intended to cause any harm, as Plaintiffs allege that Defendant Horn was acting at Defendant Coya's direction, and that Defendants Horn and Coya were agents of the Defendant entities. (Compl. at ¶18-19). Such allegations do not indicate that all Defendants had the same intent. The third element, that Plaintiffs allegedly suffered "extreme emotional distress," is also conclusorily pled, as there are no allegations that specify any physical or emotional symptoms suffered by Plaintiffs. Further, from an objective viewpoint, an ordinary person would not suffer severe emotional distress from a disruption in utility service, change in locks, or entrance by property managers to perform work. Thus, Plaintiffs fail to adequately plead any of the three elements necessary to state a claim for iied, and this count must be dismissed.

**VI.    Count VI for violation of the Chicago Residential Landlord and Tenant Ordinance ("RLTO") must be dismissed because no landlord-tenant relationship existed between Plaintiffs and Defendants.**

In Count VI, Plaintiffs allege that Defendants violated § 5-12-160 of the Chicago Residential Landlord and Tenant Ordinance (the "RLTO").  This count fails because Plaintiffs do not plead facts indicating that they had a landlord-tenant relationship with Defendants, and furthermore, the public records and Plaintiffs' own allegations indicate that no landlord-tenant relationship existed.  "As the name suggests, the [RLTO] only applies to landlords and their tenants."  *Selvy v. Beigel*, 283 Ill. App. 3d 532, 537 (1st Dist. 1996).  If no landlord-tenant relationship exists between the parties, a cause of action under the RLTO generally cannot be maintained.  *Id.*

The sole section of the RLTO that Plaintiffs contend that Defendants violated is § 5-12-160, which applies only to a "landlord or any person acting at his direction."  The RLTO defines a "landlord" as the "owner, agent, lessor or sublessor, or the successor in interest of any of them, of a dwelling unit or the building of which it is part."  RLTO § 5-12-030(b).  The RLTO defines a "tenant" as "a person entitled by written or oral agreement, subtenancy approved by the landlord or by sufferance, to occupy a dwelling unit to the exclusion of others."  *Id.* at § 5-12-030(i).

Here, Plaintiffs fail to plead that they were "tenants," and fail to plead any facts in support of their conclusion that Defendants fall within the Ordinance's definition of "landlord." Instead, Plaintiffs solely plead that they were "residents" of the Property.  (Compl. ¶5).  Since Plaintiffs do not plead that they were parties to any lease agreement, nor do they even plead that they were lawfully residing at the Property, Plaintiffs do not fall within the RLTO's definition of "tenant," and they do not have standing to bring a claim under the RLTO.

Furthermore, Plaintiffs' legal conclusion that Defendants fall within the RLTO's definition of "landlord" must be disregarded. (Compl. ¶49). The public records indicate that Plaintiffs' allegations that Defendants owned the Property are false. (Compare Exhibits A-C with Compl. ¶8).[1] Moreover, Plaintiffs' own allegations are directly contradictory, because Plaintiffs allege both that Defendants owned the Property, and that the Property was owned by a financial institution that had acquired such through the foreclosure process. (Compl. ¶8). Furthermore, Plaintiffs do not allege that any of the Defendants were acting at the direction of the property owner. Instead, Plaintiffs allege the subject conduct was performed by Defendant Horn, who was allegedly acting at Defendant Smith's direction. (Compl. ¶19). The allegations that Defendants "managed the [P]roperty" are insufficient to create liability under RLTO § 5-12-160, which only applies to a "landlord or any person acting at [the landlord's] direction." Further, Plaintiffs' request for monetary relief of $200-500 per violation must be stricken, as such only applies to complaints received by the Chicago Police Department, not prayers for relief in a civil suit. RLTO § 5-12-160.

## VII.   Count VII for "injunctive relief" does not state a valid cause of action, and this Court has already determined that Plaintiffs are not entitled to injunctive relief.

Count VII must be dismissed because "injunctive relief" is only a form of relief, and does not constitute a valid cause of action in itself. See *Padilla v. United States*, 659 F. Supp. 2d 1290, 1294 (Ct. Int'l Trade 2009). Furthermore, Plaintiffs should be denied leave to amend the Complaint to again seek an injunction, as this Court already denied Plaintiffs' Petition For a Temporary Restraining Order and Preliminary Injunction, which motion Plaintiffs noticed shortly after filing this Complaint. (Minute Order of May 2, 2012, Docket No. 8). Plaintiffs have not filed any motion for reconsideration, nor have they asserted any new grounds that

---

[1] The court may take judicial notice of matters of public record. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

would entitle them to injunctive relief. Plaintiffs' request for an injunction has already been denied, as this Court has already determined that the alleged facts do not support grounds for injunctive relief. Moreover, "[t]he granting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citation omitted). This Court has already determined that the alleged facts do not warrant such extraordinary relief.

## VIII. Defendant Smith REO Properties must be dismissed because it is not a legally cognizable entity that can be sued.

Pursuant to FRCP 17(b), a defendant may not be sued under its trade name, and any such defendant improperly named must be dismissed. *Com-Pac Int'l, Inc. v. The Packmate Co.*, 2007 U.S. Dist. LEXIS 62531 (S.D. Ill. Aug. 24, 2007); *Steel v. Hahn Prop. Mgmt. Corp.*, 1994 U.S. App. LEXIS 4369 (7th Cir. Mar. 8, 1994). Here, Plaintiffs openly admit that Defendant "Smith REO Properties" is only an assumed business name, as opposed to a legally cognizable entity. (Compl. ¶6). Further, Illinois Secretary of State records do not have a record of any corporation or limited liability company with the name "Smith REO Properties." See Exhibit D. Accordingly, Smith REO Properties has been named improperly as a defendant and must be dismissed.

## IX. Defendant Coya Smith must be dismissed because she does not face personal liability for the Defendant corporation's alleged conduct.

Defendant Smith must be dismissed because she is not personally liable for any torts by the defendant corporation or its alleged agent, Horn. Plaintiffs seek to hold Defendant Smith liable on the basis that she was the "owner and operator" of the Defendant corporation, and based on the conclusory allegations that Defendant Horn 'act[ed] at the request and the behest" of Defendant Smith. However, "corporate status generally shields corporate officers and

shareholders from liability from corporate debts and obligations," unless an officer or shareholder is personally involved in the alleged wrongdoing." See *Zahl v. Krupa*, 399 Ill. App. 3d 993, 1020 (2nd Dist. 2010). "…[C]orporate owners…may only be held vicariously liable for the actions of their agents in the presence of special circumstances." *Interfaith Housing Ctr. of the Northern Suburbs v. Bernsen*, 2011 U.S. Dist. LEXIS 75554 at *10-11 (N.D. Ill. Jul. 13, 2011) (dismissing corporate owner from the Complaint under FRCP 12(b)(6) because the plaintiff alleged no basis for holding her liable for the corporation's agents' actions). Plaintiffs have not alleged that Defendant Smith was personally involved in any wrongful conduct, other than the conclusory allegations that she requested Defendant Horn to perform certain acts. (Compl. ¶19). Such allegations that Defendant Smith was personally involved in this matter fail to meet the "plausibility" threshold of *Twombly*, and thus Defendant Smith must be dismissed from all counts.

## X. Counts I, IV, V, and VI must be dismissed pursuant to the statute of limitations.

Certain of Plaintiffs' claims (Counts I, IV, V, and VI) are subject to a two-year statute of limitations. Count I (FHA) has a two-year statute of limitations, set forth in 42 U.S.C. § 3613(a)(1)(A). Count IV (battery) and Count V (intentional infliction of emotional distress) are subject to the two-year statute of limitations in 735 ILCS 5/13-202. Count VI (RLTO) is also barred by the two-year statute of limitations in 735 ILCS 5/13-202, as RLTO § 5-12-160 is considered a statutory penalty, since it imposes a specific formula for damages. See *Landis v. Marc Realty, LLC*, 235 Ill. 2d 1, 13-15 (2009) (finding claim under RLTA § 5-12-080 was a "statutory penalty" subject to the two-year statute of limitations in § 13-202). Thus, Counts I, IV, V, and VI are barred by the respective statutes of limitations because Plaintiffs allege various acts occurred in winter 2010, which was more than two years before the Complaint was filed on

April 19, 2012. No "continuing tort" theory applies here, as Plaintiffs allege discrete and distinct wrongful acts, rather than continuous wrongful conduct. See *Torres v. All Town Bus Servs., Inc.*, 2011 Ill. App. Unpub. LEXIS 257 (1st Dist. 2011) (when all of the alleged acts except for one occurred more than two years before the complaint was filed, the entire claim for iied was barred by the statute of limitations, as the "continuing tort" theory did not apply).

## CONCLUSION

WHEREFORE, Defendants Smith Partners & Associates, Ltd., Smith REO Properties, Coya Smith, and Andy Horn respectfully request this Court to enter an order dismissing Plaintiffs' Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice, and for further relief as the Court deems just and proper.

July 3, 2012          Respectfully submitted,

SMITH PARTNERS & ASSOCIATES, LTD.,
SMITH REO PROPERTIES, COYA SMITH, AND
ANDY HORN

By: /s/ Newton C. Marshall
One of their Attorneys

Newton C. Marshall  (ARDC No. 6209427)
Michelle M. Blum  (ARDC No. 6295921)
KARBAL COHEN ECONOMOU SILK & DUNNE LLC
150 S. Wacker Drive, Suite 1700
Chicago, IL 60606
(312) 431-3700

# COOK COUNTY RECORDER OF DEEDS
## EUGENE "GENE" MOORE

Support | Help | Document Container | Account Information | Search Menu

**Add To Document Container**

Documents for PIN:**13-02-414-029-0000**

[Back One Page]

Result Matches:[1 - 15 of 15]

| Document No. | Document Type | Date Recorded | Grantor/Trust No. | Grantee/Trust No. | Prior Document |
|---|---|---|---|---|---|
| 1215132032 | SPECIAL WARRANTY DEED | 05/30/2012 | HSBC BK USA | LURIDAS SOTIRIOS | |
| 1023531041 | DEED | 08/23/2010 | JUDICIAL SALES CORP | HSBC BK USA | |
| 0907111131 | JUDGMENT | 03/12/2009 | MCCLURG CRT CTR | GOMEZ CARLOS | |
| 0828905269 | LIS PENDENS | 10/15/2008 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | GOMEZ CARLOS | 0520802165 |
| 0827504055 | ASSIGNMENT | 10/01/2008 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | HSBC BK USA | 0520802164 |
| 0827411089 | COURT DOC | 09/30/2008 | CHICAGO | GOMEZ CARLOS A | |
| 0823205256 | LIS PENDENS | 08/19/2008 | HSBC BK USA | GOMEZ CARLOS | 0520802164 |
| 0521622049 | RELEASE | 08/04/2005 | MORTGAGE ELEC REGISTRATION SYSTEM | RODRIGUEZ JOE A | 0434519020 |
| 0520802163 | WARRANTY DEED | 07/27/2005 | RODRIGUEZ JOE A | GOMEZ CARLOS | |
| 0520802164 | MORTGAGE | 07/27/2005 | GOMEZ CARLOS | MORTGAGE ELEC REGISTRATION SYSTEM | |
| 0520802165 | MORTGAGE | 07/27/2005 | GOMEZ CARLOS | MORTGAGE ELEC REGISTRATION SYSTEM | |
| 0520818089 | RELEASE | 07/27/2005 | MORTGAGE ELEC REGISTRATION SYSTEM | RODRIGUEZ JOE A | 0434519019 |
| 0434519018 | TRUSTEES DEED | 12/10/2004 | MARQUETTE BK TR / 1581 | RODRIGUEZ JOE A | |
| 0434519019 | MORTGAGE | 12/10/2004 | RODRIGUEZ JOE A | MORTGAGE ELEC REGISTRATION SYSTEM | |
| 0434519020 | MORTGAGE | 12/10/2004 | RODRIGUEZ JOE A | MORTGAGE ELEC REGISTRATION SYSTEM | |

### COOK COUNTY RECORDER OF DEEDS DISCLAIMER

While the Cook County Recorder of Deeds (CCRD) attempts to keep this website up to date with existing law and policies, the CCRD does not guarantee the accuracy of any of the information contained herein, including, but not limited to, database information and document images. CCRD also does not guarantee the legality of the documents and database information contained herein and accepts no liability for any damages incurred, whether directly, indirectly, incidental, punitive or consequential, as a result of any errors, omissions or discrepancies in any information published on this website or any use of this website, including, but not limited to use of on-line forms or affidavits.

### ACCEPTANCE OF TERMS, CONDITIONS, NOTICES AND LIMITED USE LICENSE

Access and use of this website constitutes agreement and acceptance of all terms, conditions and notices contained herein and throughout the website, as well as a limited use license for purposes including but not limited to: research, purchasing documents, downloading forms, reviewing office locations, contacting the CCRD, etc. Website access and this limited use license does not include any modification, alteration or derivative use of this website and its contents, or any use of data mining, use of robots or Bots, or use of other data gathering and extraction tools, or affidavits.

Copyright © 2010 Cook County Recorder of Deeds. All rights reserved.

Exhibit A



## JUDICIAL SALE DEED

Doc#: 1023531041 Fee: $40.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 08/23/2010 10:59 AM Pg: 1 of 3

THE GRANTOR, The Judicial Sales Corporation, an Illinois Corporation, pursuant to and under the authority conferred by the provisions of an Order Appointing Selling Officer and a Judgment entered by the Circuit Court of Cook County, Illinois, on November 3, 2009, in Case No. 08 CH 029228, entitled HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF NOVEMBER 1, 2005, FREMONT HOME LOAN TRUST 2005-D vs. CARLOS GOMEZ A/K/A CARLOS A. GOMEZ, et al, and pursuant to which the premises hereinafter described were sold at public sale pursuant to notice given in compliance with 735 ILCS 5/15-1507(c) by said grantor on May 10, 2010, does hereby grant, transfer, and convey to **HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF NOVEMBER 1, 2005, FREMONT HOME LOAN TRUST 2005-D** the following described real estate situated in the County of Cook, in the State of Illinois, to have and to hold forever:

**LOT 13 IN BLOCK 6 IN BRITIGANWOOD, A SUBDIVISION OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 (EXCEPT THE WEST 33 FEET) AND OF THAT PART OF THE SOUTH 1/2 OF THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 LYING WEST OF THE WEST LINE OF THE RIGHT OF WAY OF THE NORTH SHORE CHANNEL OF THE SANITARY DISTRICT OF CHICAGO, IN SECTION 2, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

Commonly known as 5818 N. SPAULDING AVENUE, CHICAGO, IL 60659

Property Index No. 13-02-414-029

Grantor has caused its name to be signed to those present by its Chief Executive Officer on this 18th day of August, 2010.

**The Judicial Sales Corporation**

By: _____

Nancy R. Vallone
Chief Executive Officer

State of IL, County of COOK ss, I, Kristin M Smith, a Notary Public, in and for the County and State aforesaid, do hereby certify that Nancy R. Vallone, personally known to me to be the Chief Executive Officer of The Judicial Sales Corporation, appeared before me this day in person and acknowledged that as such Chief Executive Officer he/she signed and delivered the said Deed pursuant to authority given by the Board of Directors of said corporation, as his/her free and voluntary act, and as the free and voluntary act and Deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and seal on this

18th day of August, 2010

_____
Notary Public

OFFICIAL SEAL
KRISTIN M SMITH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/08/12

This Deed was prepared by August R. Butera, The Judicial Sales Corporation, One South Wacker Drive, 24th Floor,

Exhibit B

**Judicial Sale Deed**

Chicago, IL 60606-4650.

Exempt under provision of Paragraph _____, Section 31-45 of the Real Estate Transfer Tax Law (35 ILCS 200/31-45).

_____        _____
Date                          Buyer, Seller or Representative

This Deed is a transaction that is exempt from all transfer taxes, either state or local, and the County Recorder of Deeds is ordered to permit immediate recordation of the Deed issued hereunder without affixing any transfer stamps, pursuant to court order in Case Number 08 CH 029228.

Grantor's Name and Address:

**THE JUDICIAL SALES CORPORATION**
One South Wacker Drive, 24th Floor
Chicago, Illinois 60606-4650
(312)236-SALE

Grantee's Name and Address and mail tax bills to:

HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF NOVEMBER 1, 2005, FREMONT HOME LOAN TRUST 2005-D
4828 Loop Central Drive, Ste 100
Houston, TX, 77081

Contact Name and Address:

Contact:        Teresa Gallagher, Litton Loan Servicing

Address:        4828 Loop Central Drive
                Houston, TX 77081
Telephone:      713-561-8316

Mail To:

CODILIS & ASSOCIATES, P.C.
15W030 NORTH FRONTAGE ROAD, SUITE 100
BURR RIDGE, IL,60527
(630) 794-5300
Att. No. 21762
File No. 14-08-20716

## STATEMENT BY GRANTOR AND GRANTEE

The **Grantor** or his agent affirms that, to the best of his knowledge, the name of the **Grantee** shown on the Deed of Assignment of Beneficial Interest in land trust is either a. natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated _____ AUG 2 0 2010 ____, 20____

Signature: _____
**Grantor or Agent**

Subscribed and sworn to before me
By the said _____
This _____, day of _____ ,20____.
Notary Public _____ AUG 2 0 2010

"OFFICIAL SEAL"
SARAH MUHM
COMMISSION EXPIRES 11/20/12

The **Grantee** or his Agent affirms and verifies that the name of the **Grantee** shown on the Deed or Assignment of Beneficial Interest in a land trust is either a natural person, an Illinois corporation of foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Date _____ AUG 2 0 2010 ____, 20____

Signature: _____
**Grantee or Agent**

Subscribed and sworn to before me
By the said _____ AUG 2 0 2010
This _____, day of _____ ,20____.
Notary Public _____

"OFFICIAL SEAL"
SARAH MUHM
COMMISSION EXPIRES 11/20/12

**Note:** Any person who knowingly submits a false statement concerning the identity of **Grantee** shall be guilty of a Class C misdemeanor for the first offense and of a Class A misdemeanor for subsequent offenses.

(Attach to Deed or ABI to be recorded in Cook County, Illinois if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

NW7103919ELG2022
**SPECIAL WARRANTY DEED**



Doc#: 1215133032 Fee: $42.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 05/30/2012 10:45 AM Pg: 1 of 3

Completed By: Ginali Associates, P.C.
947 N. Plum Grove Road, Schaumburg, IL 60173

THIS INDENTURE, made on the ⟨24⟩ day of ⟨April⟩ 2012, by and between **HSBC BANK USA,
NATIONAL ASSOCIATION, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT
DATED AS OF NOVEMBER 1, 2005, FREMONT HOME LOAN TRUST 2005-D, now known as, HSBC Bank
USA, National Association, as Trustee for Fremont Home Loan Trust 2005-D, Mortgage-Backed Certificates,
Series 2005-D,** hereinafter referred to as Grantor, and duly authorized to transact business in the State of Illinois, party
of the first part, and **Sotirios Luridas and Angela Luridas,** party of the second part, WITNESSETH, that the party of
the first part, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration in hand paid
by the party of the second part, the receipt whereof is hereby acknowledged, and pursuant to authority of the Board of
Directors of said corporation, by these presents does REMISE, RELEASE, ALIENATE AND CONVEY unto the party
of the second part, **Sotirios Luridas and Angela Luridas** and their heirs and assigns, FOREVER, all the following
described real estate, situated in the County of Cook, State of Illinois known and described as follows, to wit:

SEE ATTACHED LEGAL

~~Lot 13 in Block 6 in Britiganymoon, a subdivision of the South 1/2 of the Northwest 1/4 of the Southeast 1/4 (Except
the West 33 feet) and of that part of the line of the right of way of the North Shore Channel Sanitary District of
Chicago in section 2, township 40 North, Range 13 East of the third Principal Meridian in Cook County, Illinois.~~

Together with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the
reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest,
claim or demand whatsoever, of the party of the first part, either in law or equity, of, in and to the above described premises,
with the hereditaments and appurtenances: TO HAVE AND TO HOLD the said premises as above described, with the
appurtenances, unto the party of the second part, **Sotirios Luridas and Angela Luridas** and their heirs and assigns forever.

And the party of the first part, for itself, and its successors, does covenant, promise and agree, to and with the party
of the second part, **Sotirios Luridas and Angela Luridas** and their heirs and assigns, that it has not done or suffered to be
done, anything whereby the said premises hereby granted are, or may be, in any manner encumbered or charged, except as
herein recited; and that the said premises, against all persons lawfully claiming, or to claim the same, by, through or under
it, it WILL WARRANT AND DEFEND as to matters of title.

Permanent Real Estate Numbers: **13-02-414-029**

Address of the Real Estate: **5818 North Spaulding Avenue
Chicago, IL 60659**

Asset 7090577268

S Y
P 3
N Y

Exhibit C

IN WITNESS WHEREOF, said party of the first part has caused its corporate seal to be hereto affixed, and has caused its name to be signed to these presents by its Authorized Agent, the day and year first above written.

**HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-D, Mortgage-Backed Certificates, Series 2005-D**

By: _____

**By Ocwen Loan Servicing LLC, Its Attorney-in-fact**

**Marlene Saunders**          **Contract Management Coordinator**

MAIL TO:

Sotirios Luridas
5850 N. Kingsdale
Chicago, IL 60646

SEND SUBSEQUENT TAX BILLS TO:

Sotirios Luridas
5850 N. Kingsdale
Chicago, IL 60646

STATE OF FLORIDA

PALM BEACH COUNTY

On this date, before me personally appeared **Marlene Saunders**, acknowledged that he executed the same as his free act and deed.

In Witness Whereof, I have hereunto set my hand and affixed my official seal in the State of Florida aforesaid, this 24 day of April, 2012.

_____
Notary Public

My term Expires: _____

Notary Public State of Florida
Diego Gonzalez
My Commission EE128214
Expires 09/07/2015

| REAL ESTATE TRANSFER | 05/03/2012 |
|---|---|
| **COOK** | $90.75 |
| **ILLINOIS:** | $181.50 |
| **TOTAL:** | $272.25 |

13-02-414-029-0000 | 20120401604352 | 6E2UFA

| REAL ESTATE TRANSFER | 05/03/2012 |
|---|---|
| **CHICAGO:** | $1,361.25 |
| **CTA:** | $544.50 |
| **TOTAL:** | $1,905.75 |

13-02-414-029-0000 | 20120401604352 | 0V0QFJ

# CHICAGO TITLE INSURANCE COMPANY

ORDER NUMBER: 1409   NW7103919 EL
STREET ADDRESS: 5818 N. SPAULDING AVE.
CITY: CHICAGO                    COUNTY: COOK
TAX NUMBER: 13-02-414-029-0000

LEGAL DESCRIPTION:

LOT 13 IN BLOCK 6 IN BRITIGANWOOD, A SUBDIVISION OF THE SOUTH 1/2 OF THE
NORTHWEST 1/4 OF THE SOUTHEAST 1/4 (EXCEPT THE WEST 33 FEET) AND OF THAT PART OF
THE SOUTH 1/2 OF THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 LYING WEST OF THE WEST
LINE OF THE RIGHT OF WAY OF THE NORTH SHORE CHANNEL SANITARY DISTRICT OF CHICAGO
IN SECTION  2, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN,
IN COOK COUNTY, ILLINOIS.

LEGALD                    CLG                    04/25/12



Exhibit D