UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA LUIS and LUCY GOMEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | 12 C 2922 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| SMITH PARTNERS & ASSOCIATES, LTD., SMITH REO PROPERTIES, COYA SMITH, and ANDY HORN, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Maria Luis and Lucy Gomez brought this lawsuit against Defendants Smith Partners & Associates, Ltd., Smith REO Properties, Coya Smith, and Andy Horn, alleging violations of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("Fair Housing Act"), 42 U.S.C. § 3601 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and Illinois law. Doc. 1. Defendants have moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). Doc. 13. The motion is granted in part and denied in part.

**Background**

The complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true on a Rule 12(b)(6) motion. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). In evaluating a motion to dismiss, the court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that

is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The court also must consider additional facts set forth in the plaintiff's opposition brief or supported by attachments to the brief, so long as those facts "are consistent with the pleadings." *Ibid*. The following sets forth the facts as favorably to Plaintiffs as permitted by the complaint and the other materials that may be considered on a Rule 12(b)(6) motion.

Plaintiffs reside at 5818 North Spaulding in Chicago, Illinois ("Property"). Doc. 1 at ¶ 5. Smith Partners and Associates, Ltd., which operates under the assumed name Smith REO Properties, is a corporation that owns and manages residential properties. *Id*. at ¶ 6. Smith Partners managed the Property throughout the relevant time period. *Id*. at ¶ 8. Smith owns and operates Smith Partners. *Id*. at ¶ 6. Horn is an agent of Smith Partners. *Id*. at ¶ 7.

Beginning in Winter 2010, Defendants undertook a campaign of threats and harassment intended to force Plaintiffs to leave the Property. *Id*. at ¶ 10. Defendants targeted Plaintiffs because they are Hispanic and in the belief that Hispanics are unwilling to defend themselves through the legal system. *Id*. at ¶¶ 22-27. Horn entered the Property's basement at some point in Winter 2010 and removed the furnace, causing the pipes to freeze. *Id*. at ¶ 11. In November 2010, Horn padlocked the front door, which prevented Plaintiffs from entering the residence. *Id*. at ¶ 12. In Spring 2011, Horn banged on the windows and doors and removed letters from the mailbox that were addressed to Plaintiffs. *Id*. at ¶ 13. In May 2011, Horn entered the basement and removed most of its contents, including the furnace that Plaintiffs bought to replace the one that Horn had removed. *Id*. at ¶ 14. In August 2011, Horn had the electricity and water disconnected; while doing so, Horn entered the Property and struck Gomez with the intent of intimidating Plaintiffs into vacating the property. *Id*. at ¶¶ 16-17, 43. In March 2012, Horn

broke the locks to the front doors of each apartment at the Property. *Id*. at ¶ 15. Horn did all of this at the request of Smith, his boss. *Id*. at ¶¶ 18-19. On April 17, 2012, the City of Chicago turned off the water due to non-payment by Defendants. *Id*. at ¶ 20.

## Discussion

### I. Fair Housing Act (Count I)

The Fair Housing Act prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Act also makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. The Act governs conduct regardless of whether it occurs before or after a tenant or owner has acquired a property interest in a dwelling. *See Bloch v. Frischolz*, 587 F.3d 771, 780-82 (7th Cir. 2009) (en banc).

To survive a motion to dismiss, a Fair Housing Act claim must allege discrimination related to the terms, conditions, privileges, or provisions of services of a dwelling. *See Mehta v. Beaconridge Improvement Ass'n*, 432 F. App'x 614, 616 (7th Cir. 2011); *Bloch*, 587 F.3d at 776. A claim also must plead the type of discrimination that occurred, by whom, and when. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011); *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011); *Swanson v. Citibank*, 614 F.3d 400, 405 (7th Cir. 2010). Here, Plaintiffs allege the type of discrimination that occurred (race or national origin),

by whom (Smith, Horn, and Smith Partners), and when (from Winter 2010 through April 2012). Doc. 1 at ¶¶ 22-25, 27. These allegations are sufficient to survive a Rule 12(b)(6) motion. *See Swanson*, 614 F.3d at 405 ("Swanson's complaint identifies the type of discrimination that she thinks occurs (racial), by whom (Citibank, through Skertich, the manager, and the outside appraisers it used), and when (in connection with her effort in early 2009 to obtain a home-equity loan). This is all that she needed to put in a complaint.").

Defendants contend that the Fair Housing Act claim is barred by the Act's statute of limitations, which provides that a plaintiff may bring suit "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613 (a)(1)(A). The complaint, which was filed on April 19, 2012, alleges that Defendants engaged in an ongoing course of discriminatory conduct between "Winter 2010" and April 17, 2012. Doc. 1 at ¶¶ 10, 20. Although the term "Winter 2010" in the complaint is ambiguous, Plaintiffs' brief clarifies that they mean November 2010 and not, say, January or February 2010. Doc. 25-1 at 23. Because each alleged discriminatory act took place within two years of the complaint's filing, no part of the Fair Housing Act claim is even arguably barred by the statute of limitations. If discovery reveals that some of the alleged discriminatory conduct in fact took place before April 19, 2010, the court will determine whether damages for that conduct are nonetheless recoverable. *See Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 265 (7th Cir. 1996) ("In a suit claiming that the defendant engaged in a continuous course of conduct that causes damages, … a plaintiff can recover for damages that preceded the limitations period if they stem from a persistent process of illegal discrimination.").

## II. RICO (Count II)

Section 1962(c) of RICO, on which Count II is based, prohibits any individual or entity "employed by or associated with" an "enterprise" engaged in interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a § 1962(c) claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011) (internal quotation marks omitted); *see also United States v. Shamah*, 624 F.3d 449, 454 (7th Cir. 2010). To properly plead the third element, "a pattern of racketeering activity," a complaint must allege the commission of at least two predicate acts of racketeering over a ten-year period. *See DeGuelle*, 664 F.3d at 199 (citing 18 U.S.C. § 1961(5)). The Seventh Circuit has noted that "no single formula is required for a RICO pattern," which means that the standard is "necessarily less than precise," requiring the court to exercise its judgment and common sense. *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991); *see also Hartz v. Friedman*, 919 F.2d 469, 472 (7th Cir. 1990) (same).

"'Racketeering activity' is limited to the specific acts statutorily enumerated in 18 U.S.C. § 1961(1)." *DeGuelle*, 664 F.3d at 199. To constitute a "pattern," the alleged acts of racketeering activity must satisfy the "continuity plus relationship" test, which requires "a relationship between the predicate acts as well as a threat of continuing activity." *Ibid*. (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The test has a "relationship" component and a "continuity" component. "A relationship is established if the criminal acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Ibid*.

The "continuity" component is intended "to forestall RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992); *see also H.J. Inc.*, 492 U.S. at 239 ("RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff … must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."); *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) ("Congress passed RICO in an effort to combat organized, long-term criminal activity."). Paying heed to the continuity requirement ensures that RICO remains "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006); *see also Pizzo v. Bekin Van Lines Co.,* 258 F.3d 629, 633 (7th Cir. 2001). The Seventh Circuit described continuity as follows:

> Continuity can be a closed- or open-ended concept. Closed-ended continuity refers to criminal behavior that has ended but the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future. In contrast, open-ended continuity requires a showing of past conduct that by its nature projects into the future with a threat of repetition.

*DeGuelle*, 664 F.3d at 199 (citations and internal quotation marks omitted).

Plaintiffs have not adequately alleged continuity, either the open-ended or the closed-ended variety. "Open-ended continuity is present when (1) a specific threat of repetition exists, (2) the predicates are a regular way of conducting [an] ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Vicom, Inc., v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 782 (7th

Cir. 1994) (internal quotation marks omitted). Plaintiffs do not satisfy (1), for they acknowledge that Defendants no longer manage the Property. Doc. 25-1 at 5. Nor do Plaintiffs satisfy (3), for they do not allege that Defendants operate Smith Partners as a long-term association that exists for criminal purposes. It would appear that the complaint attempts to satisfy (2). It alleges that "Defendants employ Smith Partners and Smith REO as a racketeering enterprise to avoid the judicial system altogether, by forcing (mostly Hispanic) tenants in properties acquired through foreclosure actions or short-sales to vacate those properties, by illegally threatening them and interfering with said properties." Doc. 1 at ¶ 32. It further alleges that "Defendants have behaved towards many other residents of many other properties acquired in mortgage foreclosure actions, or short-sales, in a manner similar to the manner in which they have behaved towards Plaintiffs." *Id*. at ¶ 34.

These allegations do not sufficiently allege open-ended continuity. As the Seventh Circuit has cautioned, "[a] threat of continuity cannot be found from bald assertions such as '[defendant] continues his racketeering activities.'" *Vicom*, 20 F.3d at 783; *see also Roger Whitmore's Auto Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 674 (7th Cir. 2005) (holding that "[c]onclusory and unsupported allegations" are insufficient to establish open-ended continuity); *ibid*. (holding that open-ended continuity was not satisfied by the allegation that "the schemes were a regular … way the enterprises did business"). Plaintiffs' allegations that Defendants continue to engage in racketeering activity are vague and conclusory, involving unnamed victims and unspecified actions. They do not adequately plead open-ended continuity. *See Vicom*, 20 F.3d at 783 ("A threat of continuity cannot be found from bald assertions such as 'James Elliot continues his racketeering activities.'"); *Guaranty Residential Lending, Inc. v. Int'l Mortg. Ctr.*,

305 F. Supp. 2d 846, 860 (N.D. Ill. 2004) ("Plaintiff conclusorily alleges that defendants' conduct represented a regular way of doing business and a threat of continued conduct. Such conclusory allegations, however, are not sufficient to allege open-ended continuity, specific facts must support such a conclusion."); *Johnson Controls, Inc. v. Exide Corp.*, 132 F. Supp. 2d 654, 661 (N.D. Ill. 2001) ("the absence of anything other than a conclusory suggestion of such a continuing threat on [defendant's] part dooms the RICO claim").

The existence of close-ended continuity turns on "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Vicom,* 20 F.3d at 780 (internal quotation marks omitted). These factors are to be applied "with an eye toward achieving a natural and commonsense result, recognizing that Congress was concerned in RICO with long-term criminal conduct." *Ibid*. (internal quotation marks omitted). "The duration of the alleged racketeering activity is perhaps the most important element of RICO continuity." *Jennings*, 495 F.3d at 473-74 (internal quotation marks omitted).

The duration of the alleged racketeering activity here is from November 2010 through April 2012, or seventeen months. The Seventh Circuit "ha[s] not hesitated to find that closed periods of several months to several years did not qualify as substantial enough to satisfy continuity." *Roger Whitmore's Auto Servs.,* 424 F.3d at 673 (internal quotation marks omitted); *see also Midwest Grinding*, 976 F.2d at 1024 (collecting cases where the duration of the alleged scheme was insufficient to find continuity); *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 663 (7th Cir. 1992) (holding that a scheme lasting a "period of years" did not satisfy closed-ended continuity); *J.D. Marshall Int'l,* 935 F.2d at 821 (same where the alleged scheme

lasted thirteen months); *U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1266-69 (7th Cir. 1990) (same where the alleged scheme lasted sixteen months). In some cases, however, shorter time periods are sufficient. *See Vicom*, 20 F.3d at 780 (noting that the Seventh Circuit has "not ventured as far as the Third Circuit in holding that predicate acts spanning less than one year do not as a matter of law constitute a substantial period of time as required" to establish closed-ended continuity) (internal quotation marks omitted).

Although the alleged scheme's is not determinative, the other factors weigh heavily against finding close-ended continuity. The only victims the complaint identifies with specificity are Plaintiffs. *See Jennings*, 495 F.3d at 476 (rejecting closed-ended continuity where the plaintiff "is the only identifiable individual who has suffered any potential injury"); *Roger Whitmore's Auto Servs.*, 424 F.3d at 673 (same where "the victims of the defendants' activities were confined to a small group"). The only scheme identified with specificity is the scheme of forcing Plaintiffs to vacate the Property. *See id*. at 674 (the existence of a single scheme weighs against finding continuity); *U.S. Textiles*, 911 F.2d at 1269 (same); *Sutherland v. O'Malley*, 882 F.2d 1196, 1204 (7th Cir. 1989) (same). And the only specifically identified injury is the injury to Plaintiffs. *See Jennings*, 495 F.3d at 476 (rejecting closed-ended continuity where the plaintiff suffered the only identifiable injury); *Lipin Enters. Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986) ("There must be some indication of a threat of continuing activity by the defendants, not just one instance of fraud with a single victim.") (internal quotation marks omitted). For these reasons, the complaint's allegations are insufficient to plead closed-ended continuity. *See Roger Whitmore's Auto Servs.*, 424 F.3d at 674 ("the fact that we are faced with a single, isolated scheme with a confined set of victims also supports the conclusion that [plaintiff] has not shown

closed-ended continuity"); *Midwest Grinding*, 976 F.2d at 1025 (finding no continuity where "[t]here was only one victim (Midwest), one scheme (the diversion of customers and employees from Midwest to U.S. Grinding), and one type of injury (loss of business)").

.     Because the complaint does not adequately plead open-ended or closed-ended continuity, the RICO claim must be dismissed. Plaintiffs will be given an opportunity to replead the RICO claim, assuming they can do so consistent with their obligations under Rule 11(b).

### III.     State Law Claims

#### A.     Trespass to Chattel/Conversion (Count III)

Although the complaint labels Count III "Trespass to Chattel," Doc. 1 at p. 10, Plaintiffs' brief recharacterizes the claim as one for conversion. Doc. 25-1 at 11-12. Count III survives regardless of whether it is viewed as a trespass to chattel claim or a conversion claim.

Under Illinois law, trespass to chattel is "injury to or interference with possession, with or without physical force … to personal property." *Sotelo v. Direct Revenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005) (internal quotation marks omitted). "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Ibid*. (quoting Restatement (Second) of Torts § 217 (1965)). The complaint alleges that Defendants stole Plaintiffs' furnace, depriving them of its use. Doc. 1 at ¶¶ 11, 14. The complaint also alleges that Defendants locked the basement so that Plaintiffs could not access it or its contents. *Id*. at ¶ 15. This is sufficient to state a trespass to chattel claim. *See Matthews v. Homecoming Fin. Network*, 2005 WL 2387688, at *8 (N.D. Ill. Sept. 26, 2005) (allegation that the "defendants forcibly entered [plaintiff's] home without his consent and changed the locks" are sufficient to state a trespass to chattel claim).

"Any unauthorized act by which an owner is deprived of his property permanently or indefinitely, or the exercise of dominion over property inconsistent with the rights of the owner, [is] a conversion." *W. States Mut. Ins. Co. v. Verucchi*, 363 N.E.2d 826, 828 (Ill. 1977) (internal quotation marks omitted); *see also In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985) ("[t]he essence of an action for conversion is the wrongful deprivation of property from the person entitled to possession") (internal quotation marks omitted). The difference between trespass to chattel and conversion is largely a matter of degree. *See Sotelo*, 384 F. Supp. 2d at 1229-30 ("The claim of trespass to personal property's chief importance now is that there may be recovery … for interference with the possession of chattels which are not sufficiently important to be classified as conversion ….") (internal quotation marks omitted); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 2009 WL 112380, at *3 (N.D. Ill. Jan. 15, 2009). Because Plaintiffs allege a permanent deprivation of property in their possession caused by Defendants' unauthorized acts, they have pleaded a plausible conversion claim.

### B. Battery (Count IV)

To state a battery claim under Illinois law, a plaintiff must allege that the defendant engaged in "the wilful touching of the person of another" and "intend[ed] to cause a harmful or offensive contact." *Bakes v. St. Alexius Med. Ctr.*, 955 N.E.2d 78, 86 (Ill. App. 2011) (internal quotation marks omitted); *see also Happel v. Wal–Mart Stores, Inc.*, 737 N.E.2d 650, 657 (Ill. App. 2000), *aff'd*, 766 N.E.2d 1118 (Ill. 2002); *Welch v. Ro–Mark, Inc.*, 398 N.E.2d 901, 905 (Ill. App. 1979). The complaint alleges that "Horn entered the property illegally, threatened Plaintiffs, and struck Plaintiff Lucy Gomez," Doc. 1 at ¶ 17, and that "[t]he battery against Lucy Gomez was intended, through actual physical force, to intimidate Plaintiffs into vacating the

property." *Id*. at ¶ 43. These allegations are sufficient to state a battery claim. *See Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008) ("Under Illinois law, battery is the unauthorized touching of another that offends a reasonable sense of personal dignity.") (internal quotation marks omitted); *Happel v. Wal-Mart Stores, Inc.*, 319 F. Supp. 2d 883, 885 (N.D. Ill. 2004) ("To state a [battery] claim, a plaintiff must allege that the defendant intended to cause a harmful contact, that harmful contact resulted and that the plaintiff did not consent.").

Defendants submit that the battery claim cannot proceed against Smith Partners and Smith because the complaint does not allege that they intended for Horn to commit a battery and because respondeat superior liability does not attach in these circumstances. The complaint, however, alleges that Horn was acting within the scope of his agency at all relevant times and that he acted at Smith's request. Doc. 1 at ¶¶ 7, 19. Under settled tort principles, "the employer's vicarious liability extends to the negligent, willful, malicious, or even criminal acts of its employees when such acts are committed within the scope of the employment." *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007); *see also Webb v. Jewel Cos.*, 485 N.E.2d 408, 411 (Ill. App. 1985); *Steinbach v. Vill. of Forest Park*, 2009 WL 2605283, at *6 (N.D. Ill. Aug. 25, 2009). It follows that the battery claim stands as to Smith Partners and Smith.

    **C.**    **Intentional Infliction of Emotional Distress (Count V)**

To state an intentional infliction of emotional distress claim under Illinois law, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604-05 (7th Cir. 2006); *Van Stan v.*

*Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997); *Feltmeier v. Feltmeier,* 798 N.E.2d 75, 80 (Ill. 2003); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988); *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. 2000). The first requirement, "extreme and outrageous" conduct, turns on these factors: (1) the power and control the defendant had over the plaintiff; (2) whether the defendant reasonably believed his objective was legitimate; and (3) the defendant's awareness that the plaintiff is particularly susceptible to emotional distress. *See McGrath*, 533 N.E.2d at 809-11. Liability is triggered only when the defendant's conduct is so outrageous and extreme as to "go beyond all possible bounds of decency." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (internal quotation marks omitted). "[M]ere insults, indignities, threats, annoyances, petty oppressions or trivialities" are insufficient. *Ibid.*; *see also Van Stan*, 125 F.3d at 567 (same).

Here, Plaintiffs allege that Defendants took advantage of their role as property managers to perpetrate a pattern of harassing and intimidating conduct, including conduct as extreme as removing Plaintiffs' furnace during a Chicago winter. Doc. 1 at ¶¶ 11-16. The sole alleged purpose of these alleged actions was to drive Plaintiffs from the Property, and Plaintiffs suffered emotional distress as a result. *Id.* at ¶ 45. "An important factor" in intentional infliction of emotional distress claims "is whether a defendant abused a position of authority." *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010). Plaintiffs have alleged sufficient facts to state a plausible emotional distress claim. *See Obi v. Chase Home Fin., LLC*, 2010 WL 4810609, at *5 (N.D. Ill. Nov. 19, 2010) (holding that the plaintiff stated a plausible intentional infliction of emotional distress claim based on a wrongful eviction); *Matthews*, 2005 WL 2387688, at *7 (same).

### D. Chicago Residential Landlord and Tenant Ordinance (Count VI)

The Chicago Residential Landlord and Tenant Ordinance ("RLTO") provides in relevant part as follows:

> It is unlawful for any landlord or any person acting at his direction knowingly to oust or dispossess or threaten or attempt to oust or dispossess any tenant from a dwelling unit without authority of law, by plugging, changing, adding or removing any lock or latching device; or by blocking any entrance into said unit; or by removing any door or window from said unit; or by interfering with the services to said unit; including but not limited to electricity, gas, hot or cold water, plumbing, heat or telephone service; or by removing a tenant's personal property from said unit; or by the removal or incapacitating of appliances or fixtures, except for the purpose of making necessary repairs; or by the use or threat of force, violence or injury to a tenant's person or property; or by any act rendering a dwelling unit or any part thereof or any personal property located therein inaccessible or uninhabitable.

Chicago, Ill., Municipal Code § 5-12-160. The complaint alleges that Defendants sought to oust Plaintiffs by removing their furnace, padlocking the Property's front door, turning off their hot water heater, and breaking their locks. Doc. 1 at ¶¶ 11-12, 14-15. Such acts violate § 5-12-160 of the RLTO, so the viability of Count VI turns on whether the relationship between Plaintiffs and Defendants is governed by the ordinance.

Defendants argue that by not alleging the existence of a valid lease agreement, the complaint fails to adequately plead that Plaintiffs are "tenants." The argument does not carry the day. Although the complaint does not expressly allege that Plaintiffs are "tenants," it alleges that they are "residents" and refers to the existence of a "tenancy" during the relevant period. Doc. 1 at ¶¶ 5, 47-48. This is sufficient at this point to plead that Plaintiffs are tenants.

Defendants also argue that their conduct is not governed by the RLTO because they are not "landlords." Although Defendants' premise is correct—as Plaintiffs admit, Defendants no

longer own the Property, Doc. 25-1 at 5 n.1—their conclusion is incorrect.  Section 5-12-160 governs the conduct not only of a "landlord," but also of "any person acting at his direction." Chicago, Ill., Municipal Code § 5-12-160.  The complaint alleges that Smith Partners managed the Property at all relevant times.  Doc. 1 at ¶ 8.  Because it is plausible to infer that a residential management company acts at the direction of the property's landlord, the complaint sufficiently alleges that Defendants were subject to the RLTO.

> **E.** **Statute of Limitations**

The battery and intentional infliction of emotional distress claims are governed by a two-year statute of limitations.  *See* 735 ILCS 5/13-202 (2008); *Feltmeier*, 798 N.E.2d at 85 ("the applicable statute of limitations for intentional infliction of emotional distress is two years"); *Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006) ("Under the Illinois Code of Civil Procedure, the statute of limitations for personal injury claims requires that an action be commenced within two years of the date on which the cause of action accrued.").  So, too, is the RLTO claim.  *See Landis v. Marc Realty, LLC*, 919 N.E.2d 300 (Ill. 2009).  Defendants contend that portions of these claims are barred on limitations grounds.  As noted above, however, the instances of alleged misconduct all occurred within two years of the complaint's filing. Defendants' contention accordingly has no merit.

**IV.** **Injunctive Relief (Count VII)**

Count VII is styled as a claim for "Injunctive Relief."  Doc. 1 at p. 11.  Injunctive relief is not a valid cause of action.  *See Obi v. Chase Home Finance, LLC*, 2012 WL 1802450, at *4 (N.D. Ill. May 15, 2012) ( "An injunction is a remedy, not a cause of action.") (internal quotation marks omitted).  Moreover, Plaintiffs concede that Defendants no longer manage the Property,

thereby "rendering that request for relief moot." Doc. 25-1 at 5. Count VII is therefore dismissed, as is the request for injunctive relief in Count I.

## V. Smith REO Properties and Coya Smith

Defendants argue that Smith REO Properties should be dismissed as a defendant because it is not a legally cognizable entity that can be sued. The complaint acknowledges that Smith REO Properties is an "assumed name" for Smith Partners. Doc. 1 at ¶ 6; *see also* Doc. 18 at 32 (an exhibit showing that the Illinois Secretary of State does not have a record of any corporation or limited liability company named Smith REO Partners). Rule 17(b) provides that a defendant may not be sued under its trade name. *See Schiavone v. Fortune*, 477 U.S. 21, 28-29 (1986); *Com-Pac Int'l, Inc. v. Packmate Co.*, 2007 WL 2458231, at *2 (S.D. Ill. Aug. 24, 2007). Plaintiffs' brief does not respond to this point. Smith REO Properties accordingly is dismissed as a party defendant. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.") (citations omitted); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995).

Defendants also contend that Smith is not liable for any torts committed by Smith Partners or Horn. As noted above, the complaint alleges that Horn undertook his tortious actions at Smith's request and as an agent of Smith Partners. Doc. 1 at ¶¶ 6-7, 19. "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable

for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *see also Horwitz v. Holabird & Root*, 816 N.E.2d 272, 276 (Ill. 2004) (same). This is true "even if the principal neither authorized nor ratified the acts." *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086, 1096 (7th Cir. 1992) (internal quotation marks omitted). It follows, at least at the pleading stage, that Smith is a proper defendant.

## VI. Punitive Damages

Defendants argue for the first time in their reply brief that the complaint's requests for punitive damages should be stricken. Doc. 32 at 22. Because Defendants did not make this argument in their motion or initial brief, the argument is forfeited. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited"); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003) ("Because Volvo raised the applicability of the Maine statute in its reply brief, the district court was entitled to find that Volvo waived the issue.").

## Conclusion

For the foregoing reasons, Count II is dismissed without prejudice, while Count VII, Count I to the extent it seeks injunctive relief, and the claims against Smith REO Properties are dismissed with prejudice. Plaintiffs have leave to replead Count II by November 6, 2012. The motion to dismiss is otherwise denied.

October 18, 2012

United States District Judge